```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  2/24/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                      :

PRESTON HOLLOW CAPITAL LLC,         :

                                              :

                                  Plaintiff,      :

                                              :

                    -v-                   :

                                              :

NUVEEN ASSET MANAGEMENT LLC,    :
*et al.*,                                        :

                              Defendants.   :
-------------------------------------------------------------X

**OPINION AND ORDER**

22-MC-308 (PKC) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

On August 30, 2022, in the Western District of Texas, Preston Hollow Capital LLC ("PHC") moved to compel the Bojorquez Law Firm, PC ("Bojorquez") to comply with a subpoena PHC had previously served on Bojorquez, specifically with regard to the production of certain documents over which Bojorquez has asserted attorney-client privilege. Following the transfer of the motion to this District in November 2022 and a conference held on December 2, 2022, Bojorquez provided the Court with an *in camera* submission containing a subset of exemplar documents pulled from approximately 170 emails over which it has asserted privilege. The Court has reviewed the *in camera* submission and the parties' motion papers and, as explained below, finds that, with some exceptions, the exemplar documents are not privileged. Accordingly, PHC's motion is granted in part and denied in part.

# I.   BACKGROUND

## A. Factual and Procedural History

The pending motion relates to a litigation in this District in which PHC has alleged antitrust and tortious interference claims against Nuveen Asset Management ("Nuveen") and its head of municipal finance, John Miller, in connection with the high yield municipal bond market. *See Preston Hollow Capital LLC v. Nuveen Asset Management LLC, et al.,* No. 20-CV-5597 (PKC) (JLC), Second Amended Complaint, Dkt. No. 69.  In the current dispute, PHC seeks non-party discovery from Bojorquez, who PHC alleges maintains communications between one of the firm's lawyers, Dorothy Palumbo, and various municipal bond market participants.  Plaintiff's Motion to Compel Bojorquez Law Firm, PC's Production of Documents Pursuant to Federal Rule 26 ("Pl. Mot."), Dkt. No. 1, at 2.  PHC alleges that these communications "spread misinformation about PHC and the services it offered to potential borrowers," and are therefore relevant to its claim that Nuveen organized a boycott of PHC among municipal bond market participants. *Id.*

PHC served Bojorquez with a subpoena on January 11, 2022. *Id.*  In response, Bojorquez produced certain documents, but withheld approximately 170 responsive emails on the basis of attorney-client privilege. *Id.*  On August 31, 2022, PHC filed a motion in the Western District of Texas, seeking to compel Bojorquez to produce the allegedly privileged documents.  It argued that some of the documents in question had already been produced to PHC by "the market participants over

which Bojorquez claims privilege," thereby undermining the assertion of privilege. *Id.*

On September 28, 2022, Bojorquez filed an opposition to PHC's motion to compel.  Dkt. No. 6.  On October 27, 2022, the court in the Western District of Texas transferred the motion to this Court, finding that because the enforcement of the subpoena relates to the underlying action pending in this District, "[t]he interest in having a single court decide issues related to subpoenas for discovery in this case outweighs the parties' interest in having the issue decided in Austin," where Bojorquez is located.  Transfer Order dated October 27, 2022, Dkt. No. 10, at 5.

On November 18, 2022, the motion to compel was referred to me.  Dkt. No. 12.  I then held a telephone conference on December 2, 2022 (the "December 2 Conference") to discuss the remaining subpoena responses and issues relating to privilege.  Following the conference, I directed the parties to meet and confer for the purpose of identifying a sampling of documents to serve as exemplars of the 170 documents being withheld for privilege.  Dkt. No. 16.  I also directed counsel for Bojorquez to provide a supplemental response with any explanation necessary for the Court to better understand Bojorquez's position with regard to privilege.  Dkt. No. 16; *see also* Transcript of Proceedings dated December 2, 2022 ("Tr."), Dkt. No. 17, at 17:5–18:1; 22:12–25.

On December 30, 2022, Bojorquez provided 21 exemplar documents to the Court for *in camera* review along with a document describing the individuals identified in the communications (which the parties refer to as the "Table of

Contents").  That same day Bojorquez filed a supplemental response to PHC's

motion to compel in which it included a "counter motion" for protection, sanctions,

and recovery of discovery costs.  Respondent Bojorquez Law Firm, P.C.'s

Supplement to its Response to Plaintiff's Motion to Compel Non-Party Production

from Fatally Defective Subpoena; Counter Motion for Protection and Sanctions,

Additionally Seeking Recovery of Discovery Costs ("Resp. Opp."), Dkt. No. 22.  Along

with its opposition, Bojorquez submitted the Declaration of George E. Hyde dated

December 30, 2022, Dkt. No. 22-1, and the Affidavit of Caroline Kelley ("Kelley

Affidavit") dated December 30, 2022, Dkt. No. 22-2.  On January 11, 2023, PHC

filed a reply in support of its motion and in reply to Bojorquez's supplemental

response.  Plaintiff's Supplemental Memorandum in Support of its Motion to

Compel Non-Party Bojorquez Law Firm, PC's Production of Documents ("Pl.

Supp."), Dkt. No. 24.  Along with its motion papers, PHC filed the Supplemental

Declaration of Sean P. McGonigle dated January 11, 2023 ("McGonigle Decl.") with

several attached exhibits, Dkt. Nos. 25, 25-1 through 25-8.

On February 3, 2023, Bojorquez filed a motion for leave to file a sur-reply,

attaching its proposed sur-reply papers, including the Affidavit of Dorothy Palumbo

dated February 2, 2023.  Motion for Leave to File Response to Plaintiff's

Supplemental Memorandum in Support of its Motion to Compel Non-Party

Production of Documents ("Resp. Mot. Sur."), Dkt. No. 26; Response to Plaintiff's

Supplemental Memorandum in Support of its Motion to Compel Non-Party

Production from Fatally Defective Subpoena ("Resp. Sur."), Dkt. No. 26-1.  On

February 7, 2023, PHC filed a response opposing Bojorquez's request to file a sur-reply ("Pl. Sur.").  Dkt. No. 27.

### B.  Legal Standards

#### 1.  Texas Law

As discussed (and agreed to) at the December 2 Conference, *see* Tr. at 11:7–16, the Court applies Texas law to its privilege analysis.  "Because privilege rules are considered 'conduct-regulating,' New York applies the law of the 'locus' of the conduct at issue, 'because of [the locus jurisdiction's] interest in affecting the conduct of those who act within the jurisdiction and of a reliance interest on the part of the actors whose conduct is at issue.'"  *Stephens v. Am. Home Assur. Co.*, No. 91-CV-2898 (JSM) (KAR), 1995 WL 230333, at *7 (S.D.N.Y. Apr. 17, 1995) (citation omitted); *see also Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15-CV-293 (LTS) (JCF), 2017 WL 2889501, at *2 (S.D.N.Y. July 6, 2017).  Here, the privilege claims are governed by Texas law because Texas is the state with the most significant relationship to the communications in question.[1]

#### 2.  Attorney-Client Privilege

The purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  *Upjohn Co. v. U.S.,* 449 U.S. 383, 389 (1981).  While the privilege extends to all situations in

---

[1] While the parties to this dispute make passing references to the work-product doctrine, *see, e.g.,* Pl. Supp. at 1, Resp. Opp. at 7, they do not provide any analysis as to whether it is applicable here, and the Court does not consider it.

which counsel is sought on a legal matter, it protects "only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States,* 425 U.S. 391, 403 (1976).   The privilege, therefore, does not protect documents and communications "simply because they result from an attorney-client relationship." *Navigant Consulting, Inc. v. Wilkinson,* 220 F.R.D. 467, 473 (N.D. Tex. 2004).   Courts generally construe the privilege narrowly because "assertion of privileges inhibits the search for truth." *Id.* (quoting *Perkins v. Gregg Cty.,* 891 F. Supp. 361, 363 (E.D.Tex. 1995)).

Under Texas law, the elements of attorney-client privilege are: "(1) a confidential communication; (2) made for the purpose of facilitating the rendition of professional legal services; (3) between or amongst the client, lawyer, and their representatives; and (4) the privilege has not been waived." *Lanelogic, Inc. v. Great Am. Spirit Ins. Co.,* No. 08-CV-1164 (BD) (JKK), 2010 WL 1839294, at *2 (N.D. Tex. May 6, 2010) (citing TEX. R. EVID. 503(b)).   "The burden is on the party asserting the privilege to demonstrate how each document or communication satisfies these elements. . . . A general allegation of privilege is insufficient to meet this burden." *Navigant Consulting,* 220 F.R.D. at 473 (citation omitted).   "Instead, the proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the privilege exists." *Celanese Corp. v. Clariant Corp.*, No. 14-CV-4165-M (DLH), 2015 WL 9269415, at *2 (N.D. Tex. Dec. 21, 2015) (citation omitted).   "Although a privilege log and an *in camera* review of documents may assist the court in conducting its analysis, a party

6

asserting the privilege still must provide a detailed description of the materials in dispute and state specific and precise reasons for their claim of protection from disclosure." *Navigant Consulting, Inc.*, 220 F.R.D. at 473–74 (collecting cases).

## II.     DISCUSSION

### A. Bojorquez's Request to File a Sur-Reply is Denied

As a threshold matter, the Court considers Bojorquez's request to file a sur-reply.  It is well-settled that sur-replies are not permitted without court authorization.  *See, e.g., Kapiti v. Kelly,* No. 07-CV-3782 (RMB) (KNF), 2008 WL 754686, at *1, n.1 (S.D.N.Y. Mar. 12, 2008) ("Allowing parties to submit sur-replies is not a regular practice that courts follow, because such a procedure has the potential for placing a court in the position of refereeing an endless volley of briefs." (cleaned up)).  Bojorquez belatedly submitted a motion for leave to file a sur-reply on February 3, 2023, more than three weeks after PHC had submitted its reply.  It argues that it should be afforded the opportunity to respond to PHC's supplemental response because PHC raised an argument in its reply papers for the first time— whether Bojorquez was obligated to share the Table of Contents to the *in camera* submission with PHC.

It is true that sur-replies are permitted when an opposing party raises arguments for the first time in a reply.  *See, e.g., Stepski v. M/V Norasia Alya*, No. 06-CV-1694 (JSG), 2010 WL 11526765, at *1 (S.D.N.Y. Mar. 3, 2010).  However, where a party requesting to submit a sur-reply was on notice of the opposing party's argument or the party had "ample opportunity" to address the argument, courts

have denied leave to file a sur-reply. *Baerga v. City of Hartford*, 22-CV-811 (SVN), 2022 WL 16856097, at *3 (D. Conn. Nov. 10, 2022); *see also Ramon v. Corp. City of New York*, No. 17-CV-2307 (KAM), 2019 WL 1306061, at *7 (E.D.N.Y. Mar. 21, 2019).

Here, the issue of whether PHC would be permitted to view the Table of Contents was in dispute prior to Bojorquez's *in camera* submission, *see* McGonigle Declaration Ex. 1 at 1, and prior to its submission of its proposed sur-reply. Thus, if Bojorquez wanted to address the dispute concerning PHC's access to the Table of Contents, it had "ample opportunity" to do so. Bojorquez offers no further explanation in support of its request to file a sur-reply. Accordingly, its request is denied.

Even if the Court were to consider Bojorquez's sur-reply, the rulings that the Court makes in this Opinion and Order would remain the same. Aside from the arguments regarding the Table of Contents, Bojorquez does not add new support for its assertion of privilege. Bojorquez states repeatedly, but without any specificity, that the communications in question related to the provision of legal services—the communications were: "conducted in the course" of providing legal services, Resp. Sur. ¶ 2; to "facilitate legal advice," *id.* ¶ 11; and "to gather information necessary to provide legal advice," *id.* ¶ 15. In addition, the newly submitted Affidavit of Dorothy Palumbo does not provide any further detail beyond what was offered by Bojorquez's counsel during the December 2 Conference. As discussed further below, these general assertions of privilege, without "detailed description[s] of the

materials in dispute," and without reasons that are "specific and precise" in relation to the documents in question, are insufficient to justify the invocation of privilege. *Navigant Consulting*, 220 F.R.D. at 473 (citing cases).

## B. Bojorquez's Opposition to the Subpoena is Untimely

In its supplemental response, Bojorquez contends that PHC's subpoena is "fatally defective" and imposes an "undue burden" on Bojorquez. Resp. Opp. 1–2. It argues that PHC did not make an effort to reduce the burden and expense on Bojorquez in violation of Rule 45 of the Federal Rules of Civil Procedure. Resp. Opp. at 8. While Bojorquez argues at length that the subpoena is unduly burdensome, *see id.* at 8–12, its objections are untimely. PHC served the subpoena on January 11, 2022 and filed its motion to compel on August 31, 2022. Under Rule 45(d)(2)(B), objections to the subpoena were due within 14 days of service. Therefore, because Bojorquez did not file objections or a motion to quash within 14 days as required by the rule, it waived its right to object. *See, e.g., Am. Fed'n of Musicians of the U.S. & Can. V. Skodam Films, LLC*, 313 F.R.D. 39, 43 (N.D. Tex. 2015) ("The failure to serve written objections to a subpoena within the time specified by Rule 45(d)(2)(B) typically constitutes a waiver of such objections, as does failing to file a timely motion to quash." (cleaned up)).

Moreover, Bojorquez has already produced documents in response to PHC's subpoena. Tr. at 9:6–8. The only documents that PHC still seeks are those that Bojorquez has held back as privileged. Tr. at 6:15–7:2; Pl. Supp. at 9. Accordingly, Bojorquez's objections to the subpoena are not only untimely, they are effectively

moot given the production it has already made notwithstanding its arguments of burdensomeness.

### C. Bojorquez Has Not Justified its Assertion of Privilege

At the December 2 Conference, Bojorquez explained that although the communications it withheld for privilege include third parties who are not its clients, attorney-client privilege has not been waived because those third parties are the agents of the law firm and its clients.  Tr. at 9:16–22.  Specifically, counsel for Bojorquez stated at the conference that the third parties are "financial advisors that are engaged by . . . the law firm's clients, and the communications were by and between representatives and agents in connection with discussing the legality and the appropriateness of certain bond opportunities that were presented to their various clients."  *Id.*[2]

Texas law provides that the presence of third parties does not waive attorney-client privilege when the clients and third parties share a "common legal interest with respect to the subject matter of the communication."  *Lanelogic*, 2010 WL 1839294, at *4.  This is referred to as the "common interest doctrine," and is an "extension of the attorney-client privilege."  *Id.* (citation omitted).  The *Lanelogic* court found that where a plaintiff and a third party have submitted evidence and affidavits revealing that the documents withheld as privileged consisted of

---

[2] "The party resisting discovery must show specifically how each request is not relevant."  *Celanese Corp.*, 2015 WL 9269415, at *1.  In its motion papers and at the December 2 Conference, Bojorquez did not dispute that the documents in question are relevant, only that they are protected by privilege.  Thus, while the Court itself is not entirely certain if the documents it has determined not to be privileged are, in fact, relevant, it makes no findings in that regard.

communications that "contain[ed] legal advice and discuss[ed] legal opinions" pertaining to an insurance policy they were both party to, the "communications were clearly meant to be confidential" and were "protected by the attorney-client privilege, as extended by the 'common interest' doctrine." *Id.*

While counsel for Bojorquez appeared to be asserting protection pursuant to the common interest doctrine at the December 2 Conference, *see* Tr. at 9:16–10:17, this argument did not appear anywhere in its supplemental response. In fact, Bojorquez included little explanation as to why the withheld documents are privileged, only providing two generalized explanations: first, Bojorquez stated that "[a]ll of the parties in the sampling are persons employed or otherwise affiliated with the City and its Local Government Corporations . . ." Resp. Opp. at 7. Second, Bojorquez asserted that

> [i]t is the client that holds the privilege of confidentiality, not the law firm. Seeking attorney-client communications from a lawyer instead of the client is improper because the attorney cannot waive attorney-client privilege. Here, dealing with local government, it is unreasonable to necessitate conducting a public meeting to discuss if attorney-client privilege should be waived.

Resp. Opp. at 9.

Notwithstanding these cursory explanations, Bojorquez's submissions are insufficient for the Court to determine whether attorney-client privilege applies to many of the communications in the *in camera* submission. Bojorquez has not provided "detailed affidavits or other evidence" let alone any particularized explanation to support its assertions of privilege. *See, e.g., Olmos v. David B. Giles P.C.*, No. 22-CV-77-D (SAF), 2022 WL 3448641, at *3 (N.D. Tex. Aug. 17, 2022)

11

(citation omitted).  In *Lanelogic*, when the defendant "failed to adduce sufficient evidence to establish its claim of privilege," the court observed that "[w]ithout evidence explaining these documents and how the information contained therein is confidential and communicated for the purpose of obtaining legal advice, defendant cannot prove that any of the documents are privileged." *Lanelogic*, 2010 WL 1839294, at *3.

Here, Bojorquez's contention that the parties who are identified in the communications in the sampling "are persons employed or otherwise affiliated with" Bojorquez's clients, without more, is insufficient to support the invocation of attorney-client privilege.  Resp. Opp. at 7.  Bojorquez has not provided any explanation as to what "otherwise affiliated" means and has not articulated the parties' specific roles in each of the communications.  Moreover, Bojorquez's contention that only the client can waive attorney-client privilege is without merit. "Although the client owns the attorney-client privilege, it is still the burden of [Bojorquez]—as the part[y] asserting the privilege as an exemption to entitlement to discovery—to prove that an attorney-client relationship existed between themselves and [the third parties] and that the privilege applied to each withheld document or answer." *Olmos*, 2022 WL 3448641, at *2.

The Table of Contents also fails to provide the required specificity.  That document merely lists the individuals who are identified in the allegedly privileged correspondence with details about where each individual works.  However, this information offered no further context beyond what Bojorquez's counsel provided at

the December 2 Conference.[3]  These individuals are described as financial advisors

"engaged by" Bojorquez's clients in connection with "bond assistance" and "other

finances."  Beyond these descriptions, the document does not provide any

explanation as to what specific role these individuals are playing in the specific

exemplar communications and why their communications are privileged.  It does

not, as Bojorquez argues, "reveal the confidential purpose for which an attorney was

consulted."  Resp. Sur. ¶ 20.

In instances where a party has failed to justify its assertion of privilege, such

as in *Lanelogic*, a court can still review the documents in question.  2010 WL

1839294, at *3 ("Notwithstanding this failure of proof, which alone would justify

overruling defendant's objections, the court has examined a sampling of documents

from defendant's extensive privilege log in an attempt to glean information that

might shed additional light on the privilege issues in this case.").  Therefore, with

the information that is in the record, the Court has reviewed the documents and

finds the following to be privileged, because they appear either to contain attorneys'

legal advice, or to consist of legal documents that do not appear to be in final form: 2

(attorney providing advice following a phone call); 3 (attorney providing

information/advice following a conversation with another attorney); 7 (attorney

---

[3] Although at the December 2 Conference Bojorquez asserted that an opinion issued
by the Texas Attorney General might provide a basis for the invocation of attorney-
client privilege, *see* Tr. at 11:21–12:18, it made no such argument in its
supplemental response.  It only cited to it (and very briefly) in its sur-reply
memorandum of law, Resp. Sur. ¶ 19, without any analysis (or case citation) as to
how it might impact the Court's decision here.  In any event, as PHC noted, Pl.
Supp. at 8, the opinion is not binding on this Court.

advising next steps and recommendations); 10 (email containing draft legal document); 11 (attorney email circulating court decision with commentary and advice); and 17–20 (draft and questions from attorney).  These documents appear to consist of communications with attorneys and/or information that was received from or provided to attorneys for the purpose of obtaining legal advice or services.  The presence of the non-lawyer and non-client parties does not break the privilege because the clients and the third parties appear to have a common legal interest.

The remainder of the exemplar documents, however, do not implicate privilege.  Although Palumbo, Bojorquez's lawyer, authored some of the communications (1, 5, 9, 12, 13, 14, 15, and 16), received some of the communications (4 and 6), and is copied on some of the communications (8 and 21), any substantive information appears to be coming not from a lawyer or client, but from one of the third parties.  It is not the presence of these third parties in and of itself that breaks the privilege, but the contents of the documents, which do not appear to seek (or provide) legal advice.  The Court lacks sufficient information with respect to these documents to find that they are protected by privilege and documents "that merely transmit factual materials, even when plaintiff's litigation counsel or general counsel is one of the recipients, are not privileged." *Marquette Transp. Co., LLC v. M/V CENTURY DREAM*, No. 16-CV-522 (JCW), 2017 WL 11536184, at *1 (E.D. La. Jan. 4, 2017) (collecting cases); *see also Jacobs v. Tapscott*, No. 04-CV-1968-D (JK), 2006 WL 1140460, at *2 (N.D. Tex. May 1, 2006) (where no evidence provided otherwise, documents that do not appear to contain confidential

14

information are not privileged).[4]  Bojorquez has had multiple opportunities to provide an explanation as to why these documents are privileged and the Court will not keep the door open to do so indefinitely.  The only assertions of privilege by Bojorquez are conclusory and "[w]ithout evidence explaining these documents and the information contained therein, [Bojorquez] cannot prove that the documents are privileged." *Jacobs*, 2006 WL 1140460, at *2; s*ee also, e.g., Serv. Lloyds Ins. Co. v. N. Am. Risk Srvcs, Inc.*, No. 19-CV-518 (RP) (AWA) 2021 WL 148054, at *3 (W.D. Tex. Jan. 15, 2021) (conclusory descriptions in privilege log insufficient to establish attorney-client privilege).

### D. Bojorquez's Remaining Requests are Denied

In addition to objecting to the subpoena, Bojorquez requests that any documents that might be in PHC's possession and might be privileged should be turned over to Bojorquez for review, and that the Court impose sanctions on PHC in the form of attorneys' fees.  Resp. Opp. at 10–11.

First, Bojorquez contends that "[b]ased on [PHC's] disclosure that it already holds emails . . . which remain protected by the attorney-client privilege," PHC should "produce copies of all such emails" to Bojorquez, so it can determine if any of

---

[4] This includes the Table of Contents provided with the *in camera* submission.  The Court does not find the contents of this document to be protected by attorney-client privilege.  The general rule is that client identity is not protected by privilege; however, there is an exception when "revealing the identity of the client . . . would itself reveal a confidential communication."  *In re Grand Jury Subpoena for Att'y Representing Crim. Defendant Reyes-Requena*, 926 F.2d 1423, 1431 (5th Cir. 1991).  The Table of Contents does not appear to reveal any confidential communications, and so does not qualify for that exception.  Accordingly, Bojorquez is directed to produce it to PHC with the rest of the documents that the Court has determined not to be privileged.

the communications were produced to PHC inadvertently.  Resp. Opp. at 10.
Bojorquez has provided no legal authority to support this request, and more
importantly, it has not adequately supported its assertion that the documents in
PHC's possession are privileged to begin with.  Therefore, this request is denied.

Second, Bojorquez requests that the Court impose sanctions on PHC for
failing to comply with Rule 45 by imposing an undue burden and expense on
Bojorquez in connection with the subpoena.  Resp. Opp. at 10.  Bojorquez requests
that PHC pay for the costs "incurred in gathering and copying documents and
related legal fees incurred after April 24."  *Id.*  Specifically, Bojorquez requests an
award of the total amount of fees incurred, $64,845.00, or in the alternative, the
portion of the total fees incurred since April 25, 2022 that it views as unreasonable,
which amount to $48,145.00.  *Id.* at 12.

Rule 45(d)(1) specifies that the party issuing a subpoena "must take
reasonable steps to avoid imposing undue burden or expense on" on the party
complying with the subpoena.  If the requesting party does not, the court must
"impose an appropriate sanction—which may include lost earnings and reasonable
attorney's fees."  Fed. R. Civ. Proc. 45(d)(1).  Because Bojorquez identifies only fees
incurred since April 25 to be related to "Unreasonable Undue Burden Hours," *see*
Resp. Opp. at 12, the Court denies Bojorquez's request to be awarded all of its fees
and only considers whether the additional fees, $48,145.00, were incurred as a
result of PHC's failure to comply with Rule 45.

In support of its request to be awarded fees incurred after April 25, 2022, Bojorquez contends that "PHC failed to take reasonable steps to avoid placing undue burden and expense," and that "the breadth of the subpoena demonstrates PHC's attempt to take advantage and place unreasonable burden," because the subpoena requested not only documents but also "unlawful demands of interrogation, demanding testimony, the source of records," among other items. Resp. Opp. at 8–9.  However, Bojorquez has not provided sufficient detail to explain why or how the subpoena requests were unreasonable, again relying only on general assertions.[5]  As the party objecting to the subpoena, Bojorquez has the burden to demonstrate that the subpoena is "overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Edgefield Holdings v. Gilbert*, No. 17-MC-74-N (BN) (DLH), 2018 WL 1138516, at *10 (N.D. Tex. Mar. 2, 2018) (subpoena not unduly burdensome where party objecting to subpoena fails to provide specificity or explanation).  In response, PHC argues that all of the events that occurred from April 25, 2022 forward were a result of Bojorquez's "own misrepresentations and mistakes."  Pl. Supp. at 11.  For example, PHC provides detail demonstrating that Bojorquez "agreed to supplement" certain incorrect document productions.  *Id.*  Based on the record before the Court, despite multiple opportunities to do so, Bojorquez has failed to adequately explain

---

[5] Without any meaningful context, Bojorquez attaches to the Kelley Affidavit numerous pages of email correspondence between counsel for Bojorquez and counsel for PHC.  Dkt. No. 22-2.  Although these exchanges indeed reflect that counsel for both sides did not agree on the documents to be produced in response to the subpoena, these emails without more do not support Bojorquez's contention that PHC failed to comply with Rule 45.

why the fees incurred after April 25 were the result of unduly burdensome requests and has not demonstrated that PHC failed to comply with Rule 45.  Therefore, the Court denies Bojorquez's request for sanctions.  *See, e.g., Edgefield Holdings*, 2018 WL 1138516, at *16 (sanctions not warranted if requesting party complied with Rule 45).

### III.   CONCLUSION

PHC's motion to compel is granted in part and denied in part.  Bojorquez is directed by March 10, 2023 to produce documents 1, 4–6, 8, 9, 12–16, and 21 (and all matching exemplar documents), and the Table of Contents, but may withhold documents 2, 3, 7, 10, 11 and 17–20 (and any matching exemplar documents).

The Clerk is respectfully directed to close Docket No. 26 and mark it as "denied."

**SO ORDERED.**

Dated:  February 24, 2023
        New York, New York

_____
JAMES L. COTT
United States Magistrate Judge